**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LISA SANDS,** | : | |
|    Plaintiff | : | |
| v. | : | **CIVIL ACTION NO. 4:CV-07-1435** |
| **MICHAEL J. ASTRUE,** | : | **(CONABOY D.J.)** |
| **Commissioner of** | | **(MANNION, M.J.)** |
| **Social Security** | : | |
|    Defendant | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under Titles II and XVI of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.

**I.    PROCEDURAL HISTORY.**

The plaintiff protectively filed an application for DIB on July 22, 2005, alleging disability since November 9, 2001,[1] due to arthritis, carpal tunnel syndrome, tendinitis, high blood pressure and back pain. (TR. 43, 58, 273). The state agency denied her claim initially and she filed a timely request for a hearing. (TR. 34). A hearing was held on February 28, 2007, at which the Administrative Law Judge, ("ALJ"), heard testimony from the plaintiff, represented by counsel and a vocational expert, ("VE"). (TR. 268-99). On March 8, 2007, the ALJ issued an unfavorable decision. (TR. 9-18).

---

[1] The plaintiff submitted a letter to the ALJ on March 2, 2007, stating that she was willing to amend her onset date to July 2005. (TR. 41); (Doc. 10 at 4).

The plaintiff requested review of the ALJ's decision. (TR. 8). The Appeals Council denied her request on June 8, 2007, thereby making the ALJ's decision the final decision of the Commissioner. (TR. 4-7). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 8, 9 and 10).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of

2

> whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

### III.   DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (TR. 12-18). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity at any time since her alleged disability onset date. (TR. 13). At step two, the ALJ concluded that the plaintiff's fibromyalgia, chronic back pain syndrome secondary to degenerative disc disease and history of a hernia were "severe"

impairments within the meaning of the Regulations. (TR. 13). At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (TR. 14).

At step four, the ALJ found that the plaintiff is unable to perform any of her past relevant work. (TR. 16). The ALJ found at step five that the plaintiff has the residual functional capacity, ("RFC"), to perform a wide range of sedentary work. (TR. 14). The ALJ determined that there are a significant number of jobs in the national economy that the plaintiff can perform. (TR. 16-17). Thus, the ALJ concluded that the plaintiff had not been under a disability, as defined in the Act, at any time since November 9, 2001, her alleged disability onset date. 20 C.F.R. § 404.1520(g). (TR. 17-18).

## IV.   BACKGROUND.

### A. Factual Background.

The plaintiff was born on December 11, 1964 and was thirty-seven (37) years old on the alleged disability onset date. (TR. 43, 271). She is therefore considered a "younger" individual under the Regulations. 20 C.F.R. §§404.1563(c) and 416.963(c).The plaintiff graduated high school and completed a medical transcriptionist course. (TR. 272). She has past relevant work experience as a packer. (TR. 292-93).

The plaintiff takes several medications including Lipitor, Flexeril, Celexa, Effexor, Topamax, Benzopril, Toprol, Imitrex, Prilosec and Xanax. (TR. 274-75). She reported some side effects from the medications, however she stated that they were under control. (TR. 283-84). The plaintiff testified that

she suffers from depression as a result of the murder of her sister.[2] (TR. 275, 286).

The plaintiff takes care of her own personal needs, cooks, performs household chores, reads, watches television and uses the computer. (TR. 276-81). The plaintiff lives with her ill father and takes care of him. (TR. 277, 290). The plaintiff testified that Dr. Stone recommended that she perform part-time secretarial work. (TR. 284).

Vocational expert, Karen Kane, testified based on the *Dictionary of Occupational Titles*. (TR. 291-97). In response to the ALJ's hypothetical questions, the vocational expert testified that the plaintiff would be capable of performing work as a video monitor, a ticket taker or a telephone receptionist. (TR. 296).

## V.   DISCUSSION.

The plaintiff argues that the ALJ erred in rendering his RFC determination.[3] The defendant states that the ALJ's RFC determination was proper and that the medical evidence reveals that the plaintiff is capable of

---

[2] The plaintiff's sister was allegedly murdered by Hugo Selenski and at the time of the ALJ hearing the plaintiff was scheduled to testify at the upcoming murder trial. (TR. 286-87).

[3] The court notes that the plaintiff's appeal brief (Doc. 8) contains arguments relating to another claimant. In her reply brief, the plaintiff's attorney acknowledges this clerical error, stating that an incorrect version of the plaintiff's brief was filed. (Doc. 10). However, the plaintiff asserts that the arguments set forth in the plaintiff's appeal brief are applicable and supported by the record. (Doc. 10). In rendering this report, the court extracted the plaintiff's arguments from her letter to the Appeals Council dated April 25, 2007. (TR. 262-64).

maintaining a limited range of sedentary work. (Doc. 9 at 10-11).

Residual functional capacity refers to what a plaintiff can do despite her limitations. 20 C.F.R. § 404.1545(a). In determining the plaintiff's RFC, the ALJ must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. § 404.1545(a). The final responsibility for determining a plaintiff's residual functional capacity is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 404.1527(e)(2), (3). At the hearing level, the responsibility for determining a plaintiff's residual functional capacity is reserved for the ALJ. 20 C.F.R. § 404.1546.

The ALJ determined that the plaintiff is capable of performing unskilled, sedentary work, which would permit standing and walking for two hours during an eight-hour workday, sitting for six hours during an eight-hour workday, with a sit/stand option, and would not require climbing, crawling or pushing and pulling with the upper or lower extremities, and would require occasional balancing, stooping, kneeling, crouching or reaching above shoulder level, with no exposure to temperature extremes, wetness, humidity, hazards or vibrations. (TR. 16).

The defendant states that the evidence does not establish that the plaintiff was unable to perform sedentary work activity. (Doc. 9 at 10-11).

The plaintiff treated with pain management specialist, Joseph D. Paz, D.O. (TR. 109-10). Dr. Paz administered injections and epidurals to treat the plaintiff's pain. In January 2004, the plaintiff reported a 50% improvement of her low back pain after receiving bilateral lumbar facet blocks and bilateral sacroiliac joint injections. (TR. 109). In March 2005, the plaintiff again reported a 50% improvement of her low back pain. (TR. 108).

In May 2005, Dr. Paz noted that the plaintiff continued to report improvement with the nerve block injections. (TR. 102). Dr. Paz also noted

6

that the plaintiff was in rehabilitation for alcohol abuse. (TR. 102). The plaintiff reported back pain and that she was walking everyday and was doing fairly well. (TR. 102). Upon examination, her range of motion was limited on extension, she had joint tenderness and a positive straight leg raising test.[4] (TR. 102).

In July 2005, Dr. Paz administered epidural injections, he noted limited range of motion, paravertebral tenderness, sacroiliac joint tenderness and a positive straight leg raising test. (TR. 41, 185). At her follow-up visit in October 2005, the plaintiff reported no improvement of her pain after the injections. (TR. 185).

In March 2006, Dr. Paz noted that the plaintiff had continued pain. (TR. 137). The plaintiff reported that over-the-counter pain medications helped more than prescription medications. (TR. 137). Dr. Paz referred the plaintiff to a neurologist, stating that the plaintiff's MRI does not show anything specific to support her significant level of pain. (TR. 138).

The plaintiff treated with Marianne J. Santioni, D.O., for her fibromyalgia. (TR. 252). In April 2005, the plaintiff complained of lower back pain to Dr. Santioni and requested refills of her pain medication. (TR. 253). However, Dr. Santioni refused to refill her pain medication, noting that the plaintiff was admitted to a drug and alcohol rehabilitation program and was discharged with no pain medications. (TR. 253).

---

[4] The straight leg-raising test, ("SLR"), is designed to detect nerve root pressure, tension, or irritation of the sciatic nerve. With the knee fully extended, the physician raises the involved leg from the examining table. A positive SLR test requires reproduction of pain at an elevation of less than 60 degrees. A positive SLR is the single most important sign of nerve root pressure produced by disc herniation. See Andersson and McNeil, Lumbar Spine Syndromes, 78-79 (Springer-Verlag Wein, 1989).

In September 2005, the plaintiff reported that she did not have much relief since receiving epidural injections from Dr. Paz. (TR. 254). She also reported increased hand and wrist pain with stiffness. (TR. 254). Upon physical examination, Dr. Santioni noted that the plaintiff was in no apparent distress and she had tender points consistent with fibromyalgia. (TR. 254).

An MRI of the plaintiff's cervical and lumbar spine on April 6, 2007 revealed disc and degenerative changes. (TR. 265-66). The plaintiff underwent x-rays on March 12, 2007. (TR. 267). The cervical and thoracic spine x-rays revealed minimal early degenerative changes, and the lumbar spine x-ray was within normal limits with no acute disease. (TR. 267).

The plaintiff also argues that the ALJ erred by failing to afford appropriate weight to the opinions of the treating physicians. Specifically, the plaintiff states that the ALJ erred by failing to accept Dr. Stone's opinion. (TR. 262-63). The defendant states that the ALJ properly considered Dr. Stone's opinion, noting that Dr. Stone concluded that the plaintiff is capable of performing a reduced range of sedentary work. (Doc. 9 at 11-12).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). When the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066). The ALJ must consider the medical findings

that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The plaintiff treated with Cheryle A. Stone, M.D. (TR. 213-51). On September 23, 2005, Dr. Stone completed a Medical Source Statement and concluded that the plaintiff was capable of performing a reduced range of sedentary work. (TR. 121-22). Dr. Stone found that the plaintiff was capable of frequently lifting and carrying two to three pounds, occasionally lifting and carrying ten pounds, standing and walking for one to two hours in an eight-hour workday, sitting for two hours in an eight-hour workday and could push and pull unlimitedly. (TR. 121). Dr. Stone concluded that the plaintiff could occasionally bend, kneel, stoop, crouch, balance and climb. (TR. 122).

In December 2005, Dr. Stone noted that the plaintiff's sensation, reflexes, muscle atrophy, range of motion, grip strength and gait were within limits. (TR. 123).

On February 7, 2006, Dr. Stone completed a Job Capabilities and Restrictions Form. (TR. 133-34). Dr. Stone concluded that the plaintiff could perform sedentary work for two hours per day. (TR. 133). She opined that the plaintiff could sit, stand and walk for two consecutive hours and for a total of two hours during an eight-hour workday, she could lift and carry ten pounds occasionally, and five pounds frequently, she had some restrictions with her upper extremities and some environmental restrictions. (TR. 133-34). Dr. Stone also opined that the plaintiff's impairments would cause her to miss

9

work two days per month. (TR. 135). The plaintiff states that the ALJ erred by failing to accept Dr. Stone's opinion that the plaintiff would be capable of performing sedentary for only two hours per day. (TR. 262). Upon review of the record, it was reasonable for the ALJ to determine that, while the plaintiff was unable to return to her light to medium duty work, she was able to engage in sedentary work activity.

The ALJ evaluated the evidence of record and noted that the plaintiff has undergone conservative treatment relating to her chronic back pain syndrome. (TR. 15). The ALJ noted that Dr. Stone concluded that the plaintiff was capable of performing sedentary work, that the plaintiff's sensation, reflexes and degree of atrophy were within normal limits and she had adequate grip strength and normal gait. (TR. 15). Based upon Dr. Stone's assessment, the ALJ concluded that the plaintiff was capable of performing a reduced range of sedentary work. Thus, the ALJ did not err in evaluating Dr. Stone's opinion.

State-agency consultant, Theresa M. McDermott, completed a Physical RFC Assessment on October 7, 2005 and determined that the plaintiff is capable of performing light duty work with restrictions. (TR. 27-31). The ALJ found that the plaintiff was more limited than the state-agency consultant's determination.

Substantial evidence supports the ALJ's evaluation of the evidence and determination that the plaintiff is capable performing a reduced range of sedentary work.

The plaintiff also argues that the ALJ failed to consider her impairments in combination and their effect on her ability to work. (TR. 262). Specifically, the plaintiff asserts that the ALJ failed to properly consider her depression and migraines. (TR. 263). The defendant states that the ALJ properly evaluated the plaintiff's impairments. (Doc. 9 at 13-15). As noted above, the ALJ

concluded at step two of the sequential evaluation process that the plaintiff suffered from the severe impairments of fibromyalgia, chronic back pain syndrome secondary to degenerative disc disease and history of a hernia. (TR. 13). However, at step three of the sequential evaluation process, the ALJ concluded that the plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (TR. 14). The ALJ paid particular attention to Listings 1.04 (disorders of the spine) and 11.00 (neurological), *et seq.*, but found that the plaintiff failed to meet the listing requirements. (TR. 14); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 1.04, 11.00.

Regarding the plaintiff's back pain, the ALJ evaluated the plaintiff's impairment pursuant to Listing 1.04. (TR. 14); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04. The ALJ noted that the evidence does not show the existence of a qualifying musculoskeletal system disorder resulting in a significant loss of function, the inability to ambulate effectively or to perform fine or gross movements. (TR. 14); *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

The ALJ properly evaluated the plaintiff's depression and noted that the plaintiff participated in counseling and took medication to control and minimize her depressive symptoms. (TR. 13). The plaintiff testified that she only took Xanax on an as-needed basis. (TR. 274-75). She also takes Celexa and Effexor to treat her depression. (TR. 271). The plaintiff reported that side effects from her medications were under control. (TR. 283-84). On September 21, 2006, the plaintiff reported to Dr. Stone that she was very depressed regarding her sister's murder and pending trial. (TR. 241). She reported that she had no desire to leave her house or talk to anyone, she experienced poor eating and sleeping, frequent crying, and she denied any suicidal thoughts. (TR. 241). The plaintiff was diagnosed with situational depression with

11

anxiety and fatigue. (TR. 241). The plaintiff stated that when the murder trial was over, she "really want[ed] to try to get a full time job." (TR. 241).

Regarding the plaintiff's migraines, the evidence reveals that such impairment did not result in functional limitations. The plaintiff takes Topmax and Imitrex to treat her migraines. (TR. 289). She testified that she only experienced migraines occasionally due to the stress of her sister's murder trial. (TR. 289). Dr. Stone noted in September 2005 that the plaintiff's migraines were under good control. (TR. 225).

The burden is on the plaintiff, who is "in a better position to provide information," to show a disability. *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987). Further, to be entitled to disability benefits, a claimant must show that all, not just some, of the criteria for a listing are met. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The Commissioner must make the legal determination as to whether an impairment meets or equals a listing. *See* 20 C.F.R. §404.1527(e)(1) and (2). Substantial evidence supports the ALJ's finding that the plaintiff did not meet the requirements for listing level severity.

## VI. CONCLUSION.

Based upon the foregoing, **IT IS RECOMMENDED THAT**:

the plaintiff's appeal from the decision of the Commissioner of Social Security denying her claim for DIB and SSI benefits, (Doc. 1), be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date**: June 6, 2008
O:\shared\REPORTS\2007 Reports\07-1435.01.hhs.wpd